IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-14-FL

| | | |
|---|---|---|
| ANTHONY T. MCLEAN, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-29, DE-32] pursuant to Fed. R. Civ. P. 12(c). Claimant Anthony T. McLean ("Claimant"), proceeding *pro se*, filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant filed an application for a period of disability, DIB and SSI on 1 August 2007, alleging disability beginning 1 April 2001. (R. 11). Both claims were denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on 7 May 2009, at which Claimant was represented by counsel and a witness and a vocational expert ("VE")

appeared and testified. (R. 27-50). On 30 July 2009, the ALJ issued a decision denying Claimant's request for benefits. (R. 8-26). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 6-7), and submitted additional evidence as part of his request (R. 1-2, 378-95). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on 24 November 2010. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in

2

crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth

in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently
> working; and (2) must have a "severe" impairment that (3) meets or exceeds [in
> severity] the "listings" of specified impairments, or is otherwise incapacitating to the
> extent that the claimant does not possess the residual functional capacity to (4)
> perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails

at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65

F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of

the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other

work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with

the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This

regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of

functional limitation resulting from a claimant's mental impairment(s): activities of daily living;

social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§

404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision

pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2),

416.920a(e)(2).

As Claimant is proceeding before this court *pro se*, the court has reviewed and considered

Claimant's filings with the liberal construction to which *pro se* pleadings are entitled. *See Miller v.*

3

*Barnhart*, 64 Fed. Appx. 858, 859 (4th Cir. 2003) (explaining a *pro se* litigant "is entitled to a liberal construction of her pleadings"). In his motion, Claimant does not clearly assign errors to the Commissioner's final decision. However, review of Claimant's motion suggests the following alleged errors by the ALJ: (1) failure to make a severity determination as to all of Claimant's impairments; (2) improper credibility assessment; (3) improper RFC assessment; and (4) improper reliance on VE testimony. The court notes further that additional evidence was reviewed by the Appeals Council that was not presented to the ALJ. Accordingly, the court considers also whether this additional evidence qualifies as material and relevant evidence.

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 13). Next, the ALJ determined Claimant had the following severe impairments: depression and anxiety. *Id.* The ALJ also found Claimant had the following nonsevere impairments: hypertension and back pain. (R. 14). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in his activities of daily living, moderate limitations in social functioning and in concentration, persistence and pace and no episodes of decompensation. (R. 15). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a full range of work at all exertional levels involving simple, routine and

4

repetitive tasks and requiring minimal social interaction with the public. (R. 16). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 17).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work. (R. 20). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. *Id.*

## II.     Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was forty-eight years old and unemployed. (R. 47). Claimant is a high school graduate and a veteran. (R. 37, 46). Claimant described his last job as "shipping and receiving" which he performed "for some months" in 2007 but resigned after experiencing dizziness and high blood pressure. (R. 34).

Claimant testified that he is unable to work due to dizziness and a rapid heart rate caused by panic or anxiety attacks. (R. 29-30). Claimant's panic attacks occur at least once a week and can last all day. (R. 31). Claimant testified further to feeling depressed and to having high blood pressure and high cholesterol. (R. 31, 33). Claimant testified to taking numerous medications. (R. 33). Claimant was recently diagnosed as diabetic which Claimant stated was a side effect of one of his medications. *Id.* Claimant stated further that his medications cause drowsiness. *Id.*

Claimant explained that he sought no medical treatment between 2001 and 2007 because he did not have medical insurance. (R. 37). When reminded by the ALJ that veterans are not required to have insurance to seek medical treatment from the VA, Claimant testified that he "had forgotten about the VA." (R. 37). Claimant testified that Jessica King ("King"), a friend, visits him two to

5

three times per week, and always drives Claimant to his medical appointments. (R. 32). Claimant has a drivers license and on occasion, drives to the grocery store "across the street" from his home. Claimant explained he used to walk to the store but no longer can due to leg pain. (R. 33)

## III.     Testimony of Jessica King

Jessica King, a friend of Claimant's since 1997, testified as a witness at the administrative hearing. (R. 40-44). King visits Claimant once or twice a week to make sure he has food and water and is taking his medications and calls Claimant "almost every day." (R. 41-42, 44). King testified that Claimant can become forgetful, "crazy," and "very depressed." (R. 42). King testified that when Claimant experiences a panic attack, which King witnesses on a weekly basis, Claimant becomes shaky and says "crazy things," including that he wishes to kill himself and he does not "deserve to be on this earth." (R. 42).

## IV.     Vocational Expert's Testimony at the Administrative Hearing

Dr. Reyes testified as a VE at the administrative hearing. (R. 44-49). The ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience. The ALJ then asked the VE whether the individual could perform Claimant's past relevant work assuming the individual has the mental capacity found by state agency non-examining consultant, Steve O'Hagan, Ph.D. (R. 47). Dr. Hagan found Claimant capable of, *inter alia*, remembering work-like procedures, carrying out simple instructions, working in an environment where social contact is minimized and adapting appropriately to changes in the work setting. (R. 318). The VE responded in the negative, explaining Claimant's past relevant work was skilled in nature and thus exceeded the mental capacity found by Dr. O'Hagan. (R. 47-48). The VE responded further, however, that the hypothetical individual could perform other jobs, including that of bottle packer (DOT #920.685-026). (R. 48).

6

In response to questioning from Claimant's counsel, the VE testified that the hypothetical individual could not perform any "productive driven" jobs, including that of bottle packer, if the individual had "difficulty in terms of motivation, pace, decreased attention and concentration and particularly when there's any stress involved and . . . in maintaining productivity." (R. 49). In response to further questioning by Plaintiff's counsel, the VE testified that if the hypothetical individual experienced panic attacks "result[ing] in decompensation, [] recurring on a weekly basis and lasting 13 to 24 hours at time," it would preclude the individual from engaging in "any jobs that [he had] enumerated." (R. 49). The VE testified that his testimony was consistent with the DOT. (R. 48).

## DISCUSSION

### I.     Review of additional evidence submitted to the Appeals Council

The Appeals Council incorporated the following additional evidence into the record: a twenty-three page report by Barbara C. Wallace, Ph.D., dated 5 May 2010. (R. 378-95). The Appeals Council discounted the additional evidence noting the statements therein were "based largely on [Dr. Wallace's] interviews with [Claimant] and [Dr. Wallace] crediting [Claimant's] statements as well as a review of records that were considered by the [ALJ] . . . ." (R. 2). While the Appeals Council discounted this additional evidence, the court must nevertheless review this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y, Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (explaining where the Appeals Council incorporates additional evidence into the administrative record, the reviewing court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [ALJ's] findings"). However, at this stage, Claimant bears the burden of

7

demonstrating that the additional evidence is (1) new, i.e., not duplicative or cumulative of that which is already in the record, (2) material, i.e., would have changed the outcome of the ALJ's decision; and (3) relates to the claimant's medical condition as it existed at the time of the hearing. 20 C.F.R. §§ 404.970(b), 416.1470(b); *see Wilkins*, 953 F.2d at 96 (citations omitted); *see also Eason v. Astrue*, No. 2:07-CV-30-FL, 2008 U.S. Dist. LEXIS 66820, at *8, 2008 WL 4108084, at *3 (E.D.N.C. Aug. 29, 2008) (citing *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)). In this case, the relevant time period extends from 1 April 2001 (Claimant's alleged disability onset date) to 30 July 2009 (the date of the ALJ's decision).

Dr. Wallace states that the purpose of her May 2010 report is to present new evidence that suggests Claimant was disabled as a result of a mental impairment "well in advance of December 31, 2006 – indeed dating back to a major psychotic episode that began in 1999 and extended for a 6 month period that went into 2000 . . . ." (R. 379-80). Dr. Wallace states her opinion is based "on a nine month period of clinical data collection" beginning August 2009 and ending May 2010, during which time she held three clinical in-person and six telephonic interviews with Claimant, as well as a review of the VA records considered by the ALJ. (R. 379-80). The report includes a summary of Claimant's testimony and discusses Claimant's history of psychiatric treatment. (R. 383). The report also includes assessments of panic disorder, bipolar disorder, cognitive disorder and post traumatic stress disorder ("PTSD") as well as a list of then-current medications taken by Claimant. (R. 381-82).

Dr. Wallace states that Claimant has been suffering from a mental impairment since at least December 2006 which places her assessment within the relevant time period. *See Nance v. Astrue*, No. 7:10-CV-218-FL, 2011 U.S. Dist. LEXIS 120890, at *19, 2011 WL 4899754, at *7 (E.D.N.C.

8

Sept. 20, 2011), adopted, 2011 U.S. Dist. LEXIS 118077, 2011 WL 4888868 (E.D.N.C. Oct. 12, 2011) (explaining "the fact that [the new evidence included a statement] that Claimant ha[d] been suffering from his mental impairments for many years place[d] [it] within the relevant time period"). However, with the exception of the post-traumatic stress disorder ("PTSD") diagnosis, the court finds that Dr. Wallace's assessment adds nothing new to the record that was before the ALJ and is merely cumulative of the VA records from January 2008 through January 2009, which were considered at length by the ALJ. In particular, Dr. Wallace's report discusses Claimant's history of psychiatric treatment, noting Claimant had experienced anxiety since childhood, first sought assistance in 2000 and then received no further treatment until 2008 when he visited the VA. Similarly, the ALJ acknowledged Claimant's testimony that he had experienced anxiety since childhood. (R. 17). The ALJ acknowledged further Claimant's psychiatric treatment in 2000 but noted Claimant did not receive further counseling until 2008. (R. 17-18). The medical records reviewed by the ALJ also include diagnoses of panic disorder, bipolar disorder and cognitive disorder – diagnoses listed in Dr. Wallace's assessment. (R. 18, 327, 329, 330, 381).

As for Dr. Wallace's PTSD diagnosis, while the diagnosis does not appear in the VA medical records before the ALJ and thus qualifies as new evidence, the court finds this evidence to be immaterial. The PTSD diagnosis appears largely based on Claimant's testimony. However, the ALJ found that Claimant's testimony regarding his symptoms was not fully credible, based in part on Claimant's daily activities and treatment records, which for the reasons described below, the court finds is supported by substantial evidence. Moreover, Dr. Wallace's PTSD diagnosis provides no information as to how the symptoms associated therewith – "detachment from reality and his physical body, derealization, depersonalization, and . . . dizziness" – affected Claimant's work-

9

related abilities during the relevant time. Finally, while Dr. Wallace states that Claimant's medications do "not take these symptoms away," as the ALJ noted, "medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms." (R. 18).

## II.    The ALJ's failure to make an express determination as to the severity of particular impairments is not reversible error.

Claimant, acknowledging that "[t]he ALJ is in agreement with the claimant for the severe impairments of depression and anxiety," states "the only question before this Court is whether the multiple mental disorders finding of 'severe' is supported by substantial evidence." Pl.'s Mot. at 3. Claimant identifies these additional multiple disorders as PTSD, bipolar disorder, psychotic hallucinations, paranoia and dizziness. *Id.* at 2. The court interprets Claimant's step two issue as alleging that the ALJ committed reversible error in failing to classify these additional disorders as medically determinable impairments. *Id.* at 27-28.

The issue, however, is not whether the ALJ, upon making a severity finding as to certain impairments, failed to make an express determination as to other impairments. Rather, the court's concern is whether the allegedly ignored impairments at step two of the sequential evaluation process are considered in subsequent steps. *See Tarpley v. Astrue*, No. 5:08-CV-271-FL, 2009 U.S. Dist. LEXIS 45685, at *5-6, 2009 WL 1649774, at *2 (E.D.N.C. June 1, 2009) (finding no reversible error "where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation, provided the ALJ considers that impairment in subsequent steps"). Here, the ALJ specifically found Claimant satisfied the severity requirement at step two of the process by finding that he had two "severe" impairments – depression and anxiety. (R. 13). The ALJ then discussed and evaluated evidence concerning Claimant's mental impairments and symptoms thereof, including

10

panic attacks, hearing voices and concentration difficulties, as well as evidence regarding Claimant's nonsevere impairments of hypertension and back pain. (R. 14, 17-19). In discussing Claimant's panic attacks and hypertension, the ALJ specifically acknowledged complaints of dizziness associated therewith. For the reasons discussed below, the court finds the ALJ's subsequent RFC analysis incorporated the relevant, demonstrable limitations on the basis of that evidence.

As for the alleged impairments of PTSD, bipolar disorder, psychotic hallucinations and paranoia, the court notes initially that Claimant did not list these conditions as impairments in his application for benefits.[1] The court notes also that Claimant, who was represented by counsel during the administrative hearing, did not testify to these impairments during the administrative hearing and his testimony provides no insight as to how these conditions may impact his ability to work. In fact, Claimant's testimony focused primarily on his dizzy spells which Claimant attributed to his anxiety or panic attacks. (R. 29-30). The court notes further the lack of evidence in the record before the ALJ indicating that these conditions in fact affect Claimant's ability to work and Claimant cites none. Rather, Claimant relies solely on the diagnoses of PTSD with auditory hallucinations and paranoid ideation and bipolar disorder contained in Dr. Wallace's May 2010 assessment. However, the diagnosis of a condition is not enough to prove disability; "[t]here must be a showing of related functional loss." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (explaining "[t]he mere diagnosis . . . says nothing about the severity of the condition"). The ALJ has no duty to consider an impairment absent an allegation by the claimant

---

[1]  Pursuant to the Notice of Disapproved Claim, Notice of Reconsideration by the SSA and Claimant's Disability Report, Claimant attributed his alleged disability to "panic disorder, depression, vertigo and high blood pressure." (R. 59, 66, 153).

11

of such impairment and record evidence of a resultant limitation or restriction. *See* S.S.R. 96-8p, 1996 SSR LEXIS 5, at \*8, 1996 WL 374184, at \*3 (July 2, 1996) ("[W]hen there is no allegation of a . . . limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."); *see also Humphrey v. Barnhart*, No. 1:02cv32-T, 2002 U.S. Dist. LEXIS 16659, at \*7, 2002 WL 31129679, \*3 (W.D.N.C. Aug. 29, 2002) ("The ALJ is obligated to consider only those limitations or restrictions which are alleged and/or based upon relevant evidence.").

As discussed previously, the record before the ALJ contained no PTSD diagnosis and the new evidence is void as to how Claimant's PTSD affected his work-related abilities during the relevant time period. Similarly, the medical records, including Dr. Wallace's report, provide no information as to how bipolar disorder affects Claimant's ability to work. The court observes that in discussing Claimant's VA medical records, the ALJ acknowledged a 15 December 2008 progress report which indicated a diagnosis of bipolar disorder with psychotic features. (R. 18, 330). Despite the December 15th diagnosis, in a subsequent treatment record dated 30 December 2008, the physician indicated bipolar disorder needed to be ruled out. (R. 327). In summarizing this medical record, however, the ALJ misinterpreted this diagnostic impression and stated that Claimant's bipolar disorder was "subsequently ruled out." (R. 18). However, a 25 January 2009 treatment record again assessed Claimant as suffering from bipolar disorder. (R. 322). The court finds the ALJ's misinterpretation of the December 30th record as harmless. As the ALJ noted, despite the December 15th bipolar diagnosis, the treating physician opined that Claimant showed improvement and "this is the best I have seen him." (R. 18, 330). The ALJ noted further that the December 15th progress

12

report included a Global Assessment of Functioning ("GAF")[2] score of 62, *see id.*, which indicates "[s]ome mild symptoms [or] some difficulty in social, occupational, or school functioning but generally functioning pretty well." DSM-IV at 32 (bold typeface omitted). Finally, in the January 2009 progress report, the physician found Claimant had an appropriate affect, sufficient concentration, normal judgment and good insight and was oriented to person, place, time and situation. (R. 322-23); *see Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error"); *Currie v. Astrue*, No. 7:09-CV-73-BO, 2010 U.S. Dist. LEXIS 87233, at \*4 (E.D.N.C. Aug. 21, 2010) (finding the ALJ's failure to inquire about an inconsistency in the record as "harmless error because no substantive inconsistency existed") (citations omitted); *Austin v. Astrue*, No. 7:06-CV-00622, 2007 U.S. Dist. LEXIS 77892, at \*18, 2007 WL 3070601, \*6 (W. D. Va. Oct. 18, 2007) (holding that "[e]rrors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error") (citing *Camp v. Massanari*, 22 Fed. Appx. 311 (4th Cir. 2001)).

Ultimately, Claimant carries "the burden of establishing a prima facie entitlement to benefits and [he] consequently bears the risk of nonpersuasion." *Id.* (internal citations and quotations omitted); *see also* 20 C.F.R. §§ 404.1512(c), 416.912(c) ("[Claimant] must provide evidence . . . showing how the impairment(s) affects . . . functioning . . . ."). Here, Claimant has failed to carry his burden in showing an inability to perform substantial gainful activity as a result of PTSD and its associated symptoms or bipolar disorder. Accordingly, having failed to carry his burden, Claimant's

---

[2] The GAF scale ranges from zero to one-hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV"), 32 (4th ed. 1994).

13

argument as to this issue is without merit.

### III. The ALJ properly assessed Claimant's credibility.

Claimant does not identify a specific error regarding the ALJ's credibility determination, stating only that he cannot work due to his "severe disability and the medications" he is required to take for his disability. Pl.'s Mot. at 4.

Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.; see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.; see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the

14

individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3.

Here, the ALJ considered Claimant's numerous subjective complaints associated with his severe impairments, including dizziness, blurry vision, sleeping and concentration difficulties, loss of appetite, depressed mood, crying spells and walking, bending, standing and kneeling limitations, and acknowledged that Claimant's complaints were corroborated by King. (R. 17). The ALJ found that Claimant had medically determinable impairments reasonably capable of causing Claimant's subjective symptoms but concluded Claimant's subjective complaints were not fully credible. *Id.* In reaching this conclusion, the ALJ considered treatment records regarding Claimant's physical and mental impairments. Regarding Claimant's physical impairments, the ALJ noted that Claimant's hypertension was under control with medication and an October 2007 musculoskeletal exam indicated Claimant had normal power and tone in all extremities, no tenderness in the paraspinal muscles, no sensory deficit and normal range of motion. (R. 14, 257-59, 303). The ALJ also acknowledged a VA treatment record dated 4 May 2009 which noted Claimant complained of back pain and difficulty walking or exercising and that on examination, Claimant had no point tenderness but was unable to perform a straight leg raise due to pain. (R. 14, 372).

Regarding Claimant's mental impairments, the ALJ observed that Claimant had sought no treatment between December 2000 and October 2007 and that Claimant's VA treatment had been "essentially routine and/or conservative in nature." (R. 19). In particular, the ALJ noted that following Claimant's diagnosis of major depression with panic disorder in 2000, Claimant did not seek counseling services until 2008 although at some point prior to seeking said services, Claimant had been prescribed Zoloft by his primary physician. (R. 17, 248, 253). In discussing Claimant's

15

VA records, the ALJ noted Claimant's GAF scores ranged from 60 to 65.[3] The ALJ noted also that Claimant had undergone several psychological formal tests, which revealed superior immediate memory and average delayed memory and attention and "high average" executive functions. (R. 18, 326). The ALJ discussed also the October 2007 psychological evaluation performed by state agency examiner James Russell, Psy.D., who found Claimant had adequate sustained focus, intact short- and long-term memory functions, good insight and judgment with overall intellectual functioning estimated to be in the average to high average range. (R. 18, 255).

The ALJ discussed the inconsistency between Claimant's testimony and his report of daily activities which include performing housework, driving a car, shopping and handling his own bank accounts. (R. 19). In considering Claimant's statement to Dr. Russell that he had worked briefly between March 2007 and June 2007 for a healthcare provider in shipping and receiving but reportedly left the position due to health problems, the ALJ noted that Claimant had denied problems with absenteeism, tardiness or getting along with others in that position. (R. 19, 253). Similarly, while Claimant advised Dr. Russell that he left his prior position in March 2000 due to health concerns, Claimant again denied problems with attendance, timeline or work relationships on the job. *Id.* The ALJ noted further that Claimant's medications, the side effects of which are mild, have been relatively effective in controlling Claimant's symptoms. (R. 18, 291, 329, 361). In commenting on Claimant's statement made in his 2007 function report that he can only walk 1/4 of a mile before needing to rest, the ALJ opined that "[t]his description of symptoms is unusual, and not typical for

---

[3] A GAF score between 51 and 60 indicates "[m]oderate symptoms [or] moderate difficulty in social, occupational, or school functioning." DSM-IV at 32 (bold typeface omitted). A GAF score between 61 and 70 indicates "[s]ome mild symptoms [or] some difficulty in social, occupational, or school functioning but generally functioning pretty well." *Id.*

the impairments which are documented by medical findings in this case or even the impairments alleged by the claimant at that time." (R. 19). Finally, the ALJ acknowledged King's testimony that Claimant failed to seek proper treatment because he was unaware of his VA benefits; however, the ALJ noted that in light of the severity of the alleged symptoms, "[i]t is unusual however that during this whole period the claimant did not even seek treatment in the emergency room." (R. 19).

The ALJ properly evaluated Claimant's subjective accounts of his symptoms with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of his limitations was inconsistent with available objective evidence. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles*, 29 F.3d at 929 ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

IV. **The ALJ's RFC is supported by substantial evidence.**

Claimant contends that "[d]ue to [his] severe disability and the medications [he] ... take[s] for [his] disability, there is no way [he] could perform a full range of any type of work." Pl.'s Mot. at 4.

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1. The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description

17

of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

The ALJ's decision indicates that he considered Claimant's mental and physical impairments in totality before determining Claimant maintained the RFC to perform a full range of work at all exertional levels. As described earlier, the ALJ's opinion provides a detailed review of Claimant's medical records, citing medical facts and underlying evidence as to each impairment. In addition, the RFC assessment takes into consideration Claimant's testimony concerning the symptoms associated with his impairments to the extent that this testimony proved consistent with the objective medical evidence before the ALJ. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting the ALJ need not accept Claimant's subjective evidence to the extent it is inconsistent with the available evidence). Accordingly, the court finds that substantial evidence supports the RFC assessment made by the ALJ and that the correct legal standards were applied.

18

## V.     The ALJ properly relied on the testimony of the vocational expert.

Claimant contends the ALJ failed to meet his burden at step five of the sequential evaluation process because the position of "bottle packer," the only job identified by the VE as accommodating Claimant's RFC, was characterized as "obscure" by the ALJ. Pl.'s Mot. at 4.

The purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). As such, hypothetical questions posed to a VE must accurately set forth all of a claimant's physical and mental impairments. *Id.* "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir. 1992). The corollary to this rule is that the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005) (holding a hypothetical valid because it adequately reflected claimant's characteristics as found by the ALJ); *Ehrhart v. Sec'y, Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) (noting "the hypothetical question posed by the ALJ was proper because it reflected [claimant's] impairments to the extent that the ALJ found them supported by evidence in the record"). If the ALJ does not believe that a claimant suffers from one or more claimed impairments, and substantial evidence supports that conclusion, then the ALJ does not err if he fails to include those impairments in his questioning of the VE. *Sobania v. Sec'y, Health & Human Servs.*, 879 F.2d 441 (8th Cir. 1989) (explaining "the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ"); *McPherson v. Astrue*, 605 F. Supp. 2d 744, 761 (S.D. W. Va. 2009) ("The ALJ is under no duty to present the VE with hypothetical questions that include [claimant's] claimed

19

impairments if the ALJ has found those impairments to be not severe or not credible.").

Claimant notes correctly that upon asking the VE to identify a position that accommodates Claimant's RFC, the ALJ interjected that he hoped the representative position would not be "too obscure." (R. 48). In response to the VE's testimony that Claimant could perform work as a "bottle packer," the ALJ remarked, "That sounds obscure to me." *Id.* Despite the ALJ's commentary, however, the issue is whether the ALJ's reliance on the VE's testimony was supported by substantial evidence. Here, the hypothetical adequately conveyed Claimant's nonexertional limitations, and as the court explained previously, those limitations are consistent with the evidence of record. As the VE identified a position existing in significant numbers that Claimant can perform, the VE's testimony thus provided substantial evidence for the ALJ's decision that Claimant can perform alternate work. *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (noting that as few as 110 jobs constitute a significant number within the economy for purposes of satisfying step five under the sequential evaluation analysis); *Prunty v. Barnhart*, No. 6:04-CV-00038, 2005 U.S. Dist. LEXIS 16594, at *17, 2005 WL 1926611, at *3 (W.D. Va. Aug. 9, 2005) (finding VE's testimony that claimant could perform the job identified in a single DOT category as sufficient to meet ALJ's step-five burden); *see also* S.S.R. 00-4p, 2000 SSR LEXIS 8, at *6, 2000 WL 1898704, at *2 (explaining occupations listed in the DOT are "collective" descriptions of occupations and "[e]ach occupation represents numerous jobs"). Accordingly, the court finds the ALJ's determination that there are jobs that exist in significant numbers in the national economy for a person with Claimant's limitations is supported by substantial evidence.

20

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-29] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-32] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 4th day of January, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge

21